May it please the Court, Michael Baus for the appellants. I'm also joined by my co-counsel John Hanson. We've decided to split the argument. I'll be addressing the Article III standing issues and to the extent the Court wants to address them. Mr. Hanson will be addressing the constitutional issues. You'll have to speak up. I will speak much louder. Excuse me. In my view, the standing issue in this case is really controlled by the Supreme Court's decision in Lujan and this Court's decision in Idaho Conservation League, and the district court unfortunately misapplied those cases to this case. And I think there are several reasons for this. The first one is the district court, I think, lost sight of the status of the case, the procedural posture of this case. We are at the pleading stage in this case. The question is, under Lujan, have we pled injury sufficient to create standing under Article III of the Constitution? And to some extent, does that pleading of injury make sense? And I think that it does. The reason it makes sense is because of the law established in Lujan, applied in Idaho Conservation League, which is that a plaintiff who is within the zone of interests designed to be protected by procedures established in a statute is entitled to sue to enforce those procedures. That is precisely this case. The reason is the statute at issue here, California Civil Code 2527, requires pharmacy benefit managers or prescription drug claims processors to follow a procedure. That procedure is to conduct surveys of pharmacies in the state of California, to determine through those surveys what their average dispensing fees are to retail customers, and to disseminate the results of those surveys to the third-party payor clients and, according to us, also the pharmacy clients of the PBMs or pharmacy benefit managers under the statute. And the purpose of that, as expressed by the legislature when it adopted the statute, was to address a problem that the legislature perceived, which was that the effective monopsony created by the pharmacy benefit manager industry, that being the pharmacy benefit managers effectively consolidate the power of third-party payors and create something like a monopsony, allowing them to force on pharmacies reimbursement rates that don't fairly reflect their costs, don't fairly reflect the profit margins they ought to earn. So the legislature adopts this statute and says, in doing so, it is our expectation that by providing information to third-party payors, this information will be taken into account in the process of establishing the rates at which pharmacies will be paid. And, as a result, we would hope that pharmacies will be paid more. Well, what is the relief that you want here? The relief? On appeal, you mean? Yes. We want our case reinstated. The case has been dismissed with prejudice. We would like an order to the district court that the district court erred in dismissing the case. Okay. And you want the district court to order compliance with the statute, or what? Among other things. We want the district court to order compliance with the statute. We want to recover the penalties, which are provided for under Section 2528, which is the companion statute. It's the statute that provides pharmacists the right to sue. And pharmacists, by the way, are the only parties with the right to sue under the statute. But that's the right question. What? The district court said there was no standing? That's right. Isn't that the only issue we have? I believe so. I believe so. The appellees have raised the constitutional issue as a separate issue. Well, now, if we say that looking at 2528, the remedy for violation appears to contemplate a suit by an owner of a licensed pharmacy. You represent licensed pharmacies? We do. What did the district court do with that provision? It seems to indicate the legislative intent that this is at least ultimately to benefit pharmacies. I think, unfortunately, the district court ignored it. And I think that's really where she went. She made a mistake in this case. Because she didn't see that the statute is designed to establish procedures specifically for the benefit of our clients and other pharmacies like us. She really didn't discuss procedural standing, which is really what you're talking about if you ignore the client aspect of it. Which, as far as I'm concerned, we ought to ignore, at least for the purpose of this case. And so what you have is we don't have what we don't know the district court's what the district court would have done with procedural standing. And that wasn't called to the district court's attention either, was it? You mean below? It wasn't called to the district court's attention? Yes. I believe it was argued to the district court, the argument being maybe more general than specifically calling it procedural standing. I think the point we made was the substantive point that this statute was enacted for the purpose of protecting pharmacists. These procedures were enacted for the purpose of obtaining this result, which is higher reimbursements to pharmacists. With the Supreme Court discussion in Lujan, and so that was on the Eighth Circuit case when it went up, we decided otherwise. But they did not decide procedural standing, although it was discussed. And in every case that I've seen, with the possible exception of the Citizens for Better Forestry in the Ninth Circuit, there's always been a provision that the person suing, which would be like your client, that the statute or regulation gave them standing by giving them the right to get the information. It didn't go far. Lujan was one where the people suing had a right to the information as members of the public. In your situation, it doesn't quite go that far because there's nothing in the statute that requires the information that's to be gained to be given to the local pharmacies, the dispensers. Is that right? Well, I don't agree with that. I think that the statute does require that the information be provided to pharmacies because it uses the word client. You know what? Let's ignore client. Okay. Because district court decided that you're not a client. And the client is an aberration. You're really not a client here. You claim you are. But that would give you not procedural standing. That would give you actual standing. I'm limiting it to procedural standing and that you are not a client. Okay. And I'm saying how do you get over the hurdle that there's nothing in the statute that says you shall have the information? I just don't think that that's required. That would render, if that were the rule, that would render procedural standing the same as informational standing, informational entry. There would be no difference then if it were a necessity that the information be provided to the plaintiff. To my understanding, the procedural standing rules provide that as long as the plaintiff is within the zone of interest designed to be protected by the procedures established in the statute, that plaintiff has standing. And there's really no question in this case that the pharmacists we represent are within the zone of interest designed to be protected by the statute. They are specifically the people given standing to sue. That's my question. Are you asking for the information? Or are you just asking that the information go to the insurers? Well, what's important to us ultimately is that the information be provided to the third party payors. Certainly that's the most important thing to us because it's our belief and it was the legislature's belief and we've alleged in our complaint that providing that information to third party payors would provide them with a more accurate basis upon which to make determinations about what reimbursement rates to pay to pharmacies. It works much like the free market or the fraud on the market theory works in securities cases in my view. The idea is better information results in better decisions. And that's what this statute was designed to accomplish. If the Justices don't have more questions, I'll reserve my time. Any further questions? Thank you. Good morning, Your Honors. May it please the Court. I'm Tom Macris of the firm Pillsbury Winthrop Shaw Pittman, representing actually all of the respondents in the two consolidated cases. Addressing the issue of standing in this case, I think that the first point that is critical for this Court to recognize as a practicality is that this case is not about the question of whether the plaintiffs have the opportunity to proceed with a case to try to prosecute their rights under this statute, whatever those rights may be. It is clear that they have that right in California State Court. And indeed, immediately after the district court issued its ruling under Article 3, plaintiffs proceeded to, in addition to filing this appeal, essentially the same group of plaintiffs against essentially the same group of defendants filed an identical case in State Court. That was filed in Los Angeles County Superior Court. It was case number 319292. It was before Judge Cheney in the Complex Litigation Department in Los Angeles. That case is now up on appeal after granting of a demur without leave to amend. So the plaintiffs are pursuing their rights under the statute in the State Court. It lost in the district court, in the State Court, too? Excuse me? Did they lose in the State Court so far? At the trial court level, the demur was granted without leave to amend based on the First Amendment argument. I remember many years ago. Yes. It's a 12B6 motion. Okay. Sorry. Based on the First Amendment argument. So the case is proceeding in State Court. The question we're looking at here today is the question of whether, in addition to the standing that the California legislature gave pharmacists to proceed with these cases in State Court, and this is not an unusual thing for the State of California to do. The State of California likes to give people standing. I think this Court is most familiar with cases under Business and Professions Code 17200 in its earlier iteration prior to Proposition 64, under which anybody in the State had the right to pursue claims as a private attorney general, and the Ninth Circuit has consistently taken the position that private attorney general prosecutions don't meet the standing requirements of Article III, even though those cases can clearly proceed in State Court. So that's where we are now, and the question is do we have to do that? We're a court of limited jurisdiction. Absolutely correct, Your Honor, and one of the key limits on jurisdiction is the limit that is contained in Article III. Well, yeah, that's okay. We're going to decide it on a basis of federal law, and I think one of the more difficult cases you have to overcome is the Citizens for Better Forestry case by the Ninth Circuit. It seems to me that went a long way in establishing procedural standing, and in this case we have a statute which gives the plaintiffs the right to damages, and the question I have is why isn't that enough for federal standing? The mere fact that they can recover a civil penalty? I'm not aware of any case that would hold the mere fact that the State Legislature has authorized them to recover a civil penalty in and of itself would confer jurisdiction here. The penalty is unrelated to actual damages. It's just a penalty. Isn't there a question in terms of a relevant question as to whether or not the legislature has indicated that there is a certain group that this statute is intended to benefit? It's not the same as a private attorney general action where any Joe Blow can come in and say that you've done something wrong. We want to do this in order to benefit a certain class of people. Doesn't that indicate that they have some interest? There is no question, I think, that the pharmacist lobby in the State of California is a strong lobby and got a bill passed, and the legislative record reflects the fact that there was a hope that perhaps passage of this legislation would result in payors getting more information about what pharmacies charge their retail customers and payors, insurance companies, finding out that, in fact, pharmacies make more money from retail customers than they do from the insured customers, that the insurance companies would say, gee, wouldn't it be nice if we paid them something closer to what they make in retail customers? I mean, that hope is expressed in the legislative history. But anyway, but what do we do with that fact? This was the point of the statute that the legislature was recommending. The fact that the legislature hoped that that is something that could happen doesn't get us to the point where there is an injury to these plaintiffs alleged under the statute. And if we start off, there was a morphing of the argument concerning Article 3 standing as the case proceeded. As originally pled in the complaint, the theory of standing, the theory of injury, how were we hurt by what happened here, was very straightforward. If we had this information out there, the insurers would pay more and we'd have made more money. So that was injury. Yes, but the citizens who brought claims in the federal court for violation of NEPA or some other environmental law, all they were going to get is maybe the government to do an environmental study. They, and maybe not, but they were not promised anything. Isn't that analogous to where the pharmacies are? You're correct in your description of the case, Your Honor, obviously, but it's not analogous. In talking about the morphing that happened, we got to the trial court level, then we were talking about this, the injury being a failure to disclose, and in that regard, cases were cited. For example, the case dealing with the testers under the Civil Rights Act who were not given accurate information. That argument was rejected by the trial court. On appeal, the argument has morphed into discussion of the procedural injury requirements. There are a couple of reasons that the procedural injury analysis doesn't work here. Number one, all of the cases dealing with, yes, Your Honor? Well, you're talking about this morphing. I thought that the district court threw it out on standing grounds. All of these are analysis of ways you get to Article III standing. One is direct injury. Has the person been injured directly? Another is has the person been injured in that the individual hasn't gotten information to which they were entitled? All cases morph. Yes, that's true. We know that very well. If the original argument, if one argument were that we are entitled as clients under the statute to get this information, and that doesn't rule out an alternative argument, that we as the group of people that the legislature picked out as intending to benefit by this statute have procedural standing to pursue and get the statute complied with. Absolutely correct, Your Honor. I agree that that kind of change can happen. Now, with regard to procedural standing, there are a couple of points I'd like to make. First of all, the cases that are decided under procedural standing, the cases under the environmental impact reports, the cases involving endangered species, one of the things those cases have in common is that there is, in fact, a procedure. There is something, a process that has to be gone through by a federal agency, a process that involves gathering information, that involves considering information, that involves issuing reports, that ultimately involves judicial oversight as to whether the procedure was followed, and also judicial oversight as to whether the decisions that were made by the decision-maker were arbitrary and capricious or were supported in some fashion by the record. This case is about, this statute is about nothing but providing information, doing a procedure. It's not about building a bridge or a dam. It's not about a procedure. It's about simply giving a report from the PBMs to their payors. That is not a procedure. It's not a process that you go through to reach a conclusion that is based on... You get information and you give it to somebody. They have no obligation to do anything at all with it in any sense. They can throw it in the trash can the day it comes in the door. This is not a logical procedure designed to get you to a particular point. The... Well, isn't that a legislative decision as to whether or not this is worth doing? Well, it's also a question of what do you have, what are you looking for? If you're going to talk about the injury that supports jurisdiction being a procedural injury, failure to follow a procedure, how is the plaintiff hurt by that failure to follow the procedure? In the environmental cases, the way the plaintiff is hurt is that the statute has been set up to provide some level of rational decision-making, information gathering, information analysis, written decision, judicial oversight. There's a procedure to get you to rational decision-making. Here, there's none. There's put the study together, give it to somebody, period. End of story. No analysis. They don't have to do anything with it. It's not a procedure that leads to a decision that will impact plaintiffs. Isn't there a follow-up to the legislation, a procedure where the people like, you know, Blue Shield and those outfits that do the paying, they get enough information, they may change the setup as to how much goes where and how much a pharmacy gets? That's a hope and a desire, and they need the information for that. Isn't that the same as the environmental cases? I think it's very different, Your Honor, because it is merely a hope based on putting information out there. There is no procedure to try to ensure that that information is used in any particular way. There is no reason, and this is very clear. I mean, if the conclusion of the court is that you believe that if the insurance companies had this information, they'd pay the pharmacist more money, you know, that that is a potential basis for jurisdiction. The district court concluded that that was not something that was reasonable to believe. If you don't believe that, then imposing the fact that there is a procedure imposed here, if it doesn't get you there, it doesn't get you that direction. Having the procedure is not relevant. And particularly where the procedure is not a real process, a real procedure that leads you to decision making. I'm clearly not... I don't see why requiring information to be made available to specific people is not a legitimate legislative goal. I think it may be a legitimate legislative goal, although I think it violates the First Amendment in this case. But they're proceeding with that issue in State court. The question is, does the fact, does that amount to the kind of procedure that gives you a basis for Article III standing separate and apart from the question of actual injury? Is that the kind of procedure where failure to follow the procedure in and of itself gets you there? And I would cite the court to... Let me ask you a question. Yes, Your Honor. Why is it that your client doesn't want to turn that information over to the plaintiffs? It is... What are they afraid of? There are a lot of different stories among the defendants. My client, which is...  I represent a company called First Health Services, which is out of Virginia, had no idea this statute existed until they got a letter from plaintiff's counsel. And when they did, they read the statute, and when they read the statute, they concluded they were not covered by it and sent a letter back to plaintiff's counsel saying, we don't think we're covered by it. So there was no great desire not to comply. And if this were only about will you do these studies next year, who knows whether the case would have been settled already. The case hasn't been settled because there are statutory penalties of a minimum of $1,000 per violation. And plaintiff's theory in this case is every single time we filled a prescription in California, that's a violation with a $1,000 penalty. So we're talking millions or billions of dollars in statutory damages, which is why we're litigating. Well, the pharmacy, you know, you represent pharmacy benefit managers, do you? I represent a company that falls in that category, yes. I see. And what they're worried about is that there may be violations and every one is going to cost them $1,000. And plaintiffs assert that there are millions of violations. So it's a big-dollar case if plaintiffs are correct, which is why it's litigated the way it is. Let me just finish on the subject of. Federal jurisdiction is. Diversity. Diversity. Yes. Let me just finish on this topic by citing the court to Douglas County v. Babbitt, 48 F. 3rd, 1495, which is another decision addressing the subject of procedural injury. And I would note that in that case, the court specifically talked about the fact that procedural injury has to have some relationship to a concrete injury that underlines it. Is that case in your brief? It is not, Your Honor. Well, give me the site again. 48 F. 3rd, 1495. And what's the style? Excuse me? What's the name of the county? Ah, Douglas County v. Babbitt. And in footnote 6, the court discusses the question of what relationship there has to be between the procedure and a claimed concrete injury and notes that there has to be at least a reasonable probability that the plaintiff has an underlying concrete interest that is served by the, that the procedure can redress. And if the court has no further questions, I'll reserve the remainder of my time to respond. They want to know what's going on, that's all. We don't have any, sir, rebuttals. I have not spoken on the First Amendment issue yet, if that's going to be addressed separately. We're not getting into that. Okay. I don't know, are we getting into that? It was raised by respondents as an alternate basis for upholding dismissal of the case. They didn't argue with it. But that's First Amendment. Yes, it is. You have to have standing to go to decide the First Amendment, don't you? Which is why the district court, after deciding that there was no standing, decided not to address the First Amendment issue. So we're not reviewing any decision on the First Amendment. All right. Thank you, Your Honor. Thank you again, Your Honor. Just briefly, I wanted to touch on a couple of things.  How the process functions and the way it goes together, is that the question? Well, just start talking. I'll tell you whether it's a real question or not. Okay. Pharmacies provide services to consumers. They fill prescriptions. They sell drugs. They sell drugs. Some of the consumers to whom they sell drugs are insured and some of them are uninsured. Yeah. With respect to those who are insured, those insured patients are handled by an insurance company. It provides the insurance. But in between the insurance company or third-party payer, because in some cases it's, they're not insurance companies. They're other entities. But between the insurance companies and the pharmacies. Yeah, they set a price. There's, well, there's an entity. I got a lot of cars. PBMs. Well, the cars are probably provided by the PBMs, namely the Respondent's clients or the Respondent's, excuse me. Those PBMs process prescription drug claims for the third-party payers or insurance companies and the pharmacies. When the pharmacy takes a prescription for an insured patient, the pharmacy inputs information into a computer. The computer says, okay, this is the insurance company that handles this. And it gets processed through the pharmacy benefit manager. They charge you $10. That's right. The $10 copay is normally kept by the pharmacy. In addition, the pharmacy receives some additional payment from the insurance company but through the PBM in an amount that's set by contract. And that contract is negotiated not between the pharmacy and the insurance company, but between the pharmacy and the PBMs, who act as essentially collective bargaining agents for insurance companies, because normally they represent multiple insurance companies and multiple insurance plans. This statute requires the PBMs, who are really the entities conducting the actions here, to perform surveys of pharmacies, to ask the pharmacies, what do you charge? They ask for information, but the result they're supposed to obtain is, what do you charge to uninsured patients in order to fill their prescription? In other words, what's the difference between the cost to you of the drug? Well, let's say they charge less to uninsured patients. If they did, that would be information certainly that the insurers would want to know, because they're not getting a very good deal from the pharmacies. The fact is that pharmacies charge much more to uninsured patients on average, because uninsured patients essentially can't say, well, I represent a million or in some cases 10 or 15 or 50 million consumers, who if you don't enter into a contract with me, you can't fill their prescriptions, period. They're unavailable to you. So the statute is designed to require the PBMs to collect information about what is charged to uninsured consumers, which would normally be more than to insured consumers, and provide that information to at least to the third-party payors or insurance companies. And the idea of the third-party payors then figure out, well, these drugstores are making too much money when you combine the two, so maybe we better cut back on what we're paying them. Well, I think that what the argument would go, not quite. I think the argument would go that the third-party payors recognize as a result of seeing, wow, we're paying very, very little to pharmacies, but we're still under tremendous price pressure. Where is, where are our dollars lost? Our contention is that the reason dollars are lost is not because of the pharmacies. It's because of the PBMs. The PBMs are siphoning off millions and in some cases billions of dollars in these transactions. That's why the PBMs don't want to provide this, the respondents don't want to provide this information to insurance companies, because the insurance companies will begin to recognize with this information that they're looking to the wrong place for their cost savings. By requiring pharmacies to fill prescriptions below cost in many cases, they're not accomplishing what their goals ought to be. Their goal ought to be, one, to make sure that there's a network of pharmacies to provide prescriptions to consumers, and, two, to obtain cost savings. Our contention is, and I think the legislature's belief was, that the third-party payors or insurance companies would recognize that their cost savings, they've rung all of the cost savings they can out of pharmacies and, in fact, passed a reasonable cost saving with a pharmacy some time ago and need to look somewhere else. Namely, they need to look to their PBMs as a source of their cost savings, because that's really where the profits are in this industry these days. And our contention is, and I think the legislature's belief was when they enacted the statute, was that with the information provided by the state. The PBMs work for the drug companies. The PBMs work for multiple entities. They provide services for pharmacies. They process our claims and they charge us for that, incidentally, which is, by the way, another basis for standing. Just to address it briefly, we've argued in our briefs, and I think we're correct about it, that under our 17200 claim, which is not really a private attorney general claim. It's a claim that says the contracts that are at issue in this case are illegal and unenforceable. As a result, we're entitled to recover from the PBMs the fees they charge us for filling prescriptions and we're entitled to something different. To get back to the point, the idea was that the third-party payors or insurance companies would recognize that their cost savings are coming from the wrong place, that they're pushing prices down at pharmacies and that's not where they ought to. They ought to push down at the PBMs. And I think it would be a mistake, and really it's contrary to the law, to assume, which is what their argument is, to assume that the legislature does not know how to achieve its stated goals. It has a stated purpose. It's enacted a statute to achieve that purpose, and one ought not to assume that it can't achieve that purpose. I suppose that the remedy, if they think this is a dumb statute that doesn't achieve its purpose and is hurting the wrong people, is to go to the legislature. I agree. I agree. Well, anyway, this whole case has given me a headache. Can I need a prescription? Thank you very much, Your Honor. If I go to my PBM, it's cheaper, right? Ordinarily. Now when I go to the drugstore, if it's not covered, I'll say, I want the same price as you give the PBM. And some pharmacists might do that. Yeah, sure. Sure, some might. Sure. And a lot of the drugstores that say, you know, we're cheaper and all that, they're not. It's true. You've got to shop around for each pill. Yes. Okay. Okay. Thank you very much. Before you've got some time, I still want to find out how you get around the cases that your opponent cites and says, unless there's some way that the plaintiff is to get that information, the plaintiff is not damaged. And what he says, what your opponent says, in effect, is it's just speculative that the information would be put out to your people. The insurance companies who get the information, if they got it, they don't have to tell you a damn thing under the statute. That's true. The insurance companies certainly under the statute don't have any obligation to provide us with information. They don't have an obligation under the statute to use the information that's provided to them. But certainly economic theory, including the theory that would, that drives the fraud in the market theory, would provide that information is what benefits the free market process. And the legislature believed, and I think that one ought not second guess the legislature here, the legislature believed that it would result. Well, I mean, believe it. They didn't say where to get that information. They didn't say the pharmacies are to get that information. And it's just sort of up in the ceiling. But you're saying that you still have, that's enough because the legislature said you can sue for damages. If they don't do what they're supposed to do, that's enough for procedural standing. I think that's right. Certainly at this stage of the case, at the pleading stage of the case. The statute does provide that the information is to go to the insurers, isn't it? It does. The information has to be provided to the insurers under the statute. To who? The insurers, the third party payors. I assume that. Yes, that's right. I just think it would be a mistake to presume that the legislature can't, doesn't know how to do its job, essentially. Okay. Thank you. Any further questions? All right. The case just argued is submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Bright , Pregerson